Joseph G. Chu (CA State Bar No. 249483)
joseph@jciplawyers.com
JCIP
1055 West 7th Street, 33rd Floor
Los Angeles, California 90017
Telephone: 323.983.2293
Facsimile: 323.983.0869

Attorneys for Nonparties
SAMINCHEM INC.
SUNLAND NUTRITION, INC.
VITAJOY USA INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CREATIVE COMPOUNDS, INC., <br><br> Defendants. | CACD Case No. 16MC00118 <br> CASD Case No. 15CV2081 JM RBB <br><br> **NOTICE OF MOTION AND MOTION TO QUASH AND TRANSFER TO U.S. DISTRICT COURT FOR SOUTHERN DISTRICT OF CALIFORNIA** <br><br> Date:     October 17, 2016 <br> Time:    9:00 a.m. <br> Location: 312 N. Spring Street <br>           Los Angeles, CA 90012 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 17, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012, nonparties Saminchem Inc. ("Saminchem"), Sunland Nutrition Inc. ("Sunland") and Vitajoy USA, Inc. ("Vitajoy") (collectively, the "Nonparties") will move the Court for an Order quashing the subpoenas issued by plaintiff Natural Alternatives International, Inc. ("NAI") to produce documents, information or objects or to permit inspection of premises in a civil action. The Nonparties also seek to transfer the instant Motion to Quash from the U.S. District Court for the Central District of California (compliance Court) to the U.S. District Court for the Southern District of California (issuing Court). NAI's subpoenas stem from a case entitles *Natural Alternatives International, Inc. v. Creative Compounds, Inc.*, filed on September 18, 2015, in the U.S. District Court for the Southern District of California, Case No. 15CV2081 JM RBB.

This motion is made pursuant to the Federal Rules of Civil Procedure, Rule 45, which requires a Court quash a subpoena that subjects a party to any "undue burden." The documentation sought by NAI relates to the Nonparties purchase, importation, storage, offer for sale and sale of beta alanine (3-Aminopropanoic acid), a naturally occurring and non-essential amino acid compound. Such information is unequivocally irrelevant to NAI's complaint against Creative Compounds, Inc. ("Creative"), for allegedly making false and/or misleading statements. Further, the documentation sought from the Nonparties includes information nearly 20 months *prior* to Creative's allegedly misleading statements. As competitors with NAI and Creative, the Nonparties also seek to quash NAI's subpoenas to prevent the unnecessary or unduly harmful disclosures of a trade secret and other confidential research, development, and commercial information. Moreover, the documentation sought concerning communications between

Creative and the Nonparties, including any potential agreements, is also unduly burdensome to the Nonparties given NAI can more easily obtain such information from Creative, an actual party to the action.

Pursuant to Rule 45, the Nonparties also consent to transfer of the instant Motion to Quash from the Central District to the Southern District, the Court which has managed this case for over a year now.

This motion is based upon this notice of motion, the memorandum of points and authorities, the declarations of Charles Kuo, Xuzhou Liu, Scott M. Chou and Joseph G. Chu, and all exhibits lodged in support of this motion, the pleadings and papers filed in this action and upon such other matters as the Court may properly consider.

Dated: September 15, 2016        JCIP

By: /s/ Joseph G. Chu
    Joseph G. Chu

    Attorneys for Nonparties
    SAMINCHEM INC.
    SUNLAND NUTRITION, INC.
    VITAJOY USA INC.

# TABLE OF CONTENTS & AUTHORITIES

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

    A. The Southern District Case ........................................................................................... 1

    B. The Subpoenas ............................................................................................................... 2

    C. Saminchem Inc. .............................................................................................................. 2

    D. Sunland Nutrition, Inc. .................................................................................................. 3

    E. Vitajoy USA Inc. ............................................................................................................ 3

III. ARGUMENT ....................................................................................................................... 4

    A. Legal Standard................................................................................................................ 4

    B. This Motion should be transferred to the U.S. District Court for the Southern District of California ................................................................................................................... 6

    C. The Nonparties' market share information is irrelevant ................................................ 6

    D. NAI has no need to acquire correspondence between the Nonparties and Creative because it is available from Creative ............................................................................. 8

    E. NAI's requests are overbroad and burdensome ............................................................. 9

    F. NAI's requests seek highly confidential, competitive information.............................. 10

    G. A Protective Order will not overcome the Nonparties' legitimate objections to producing valuable and confidential information ...................................................... 11

IV. CONCLUSION................................................................................................................... 13

Cases

*American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 741 (Fed. Cir. 1987) .......................... 5, 10, 11

*Anderson v. Abercrombie & Fitch Stores, Inc.*, No. 06cv991-WQH (BLM), 2007 U.S. Dist. LEXIS 47795, at *6 (S.D. Cal. July 2, 2007) ........................................................................ 7

*Bader Co. v. Montgomery Ward*, 32 F.R.D. 208, 209-210 (S.D. Cal. 1963) .................................. 8

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 328 (D.D.C. 1966) ........................ 8

*Cusumano v. Microsoft Corp.*, 162 R3d 708, 717 (1st Cir. 1998); .................................................. 5

*Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980) ..................... 5

*Echostar Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391 (D. Colo. 1998) ....... 12

*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ............................ 9

*Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006) ..................................... 10

*Food Lion, Inc. v. United Food & Comm 'l Workers Int'l Union*, 103 F. 3d 1007, 1012-1013 (DC Cir. 1997) ......................................................................................................................... 8

*Guy Chem. Co. v. Romaco AG,* 243 F.R.D. 310 (N.D. Ind. 2007) ................................................. 5

*Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ................ 5

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 528-529 (D. Del. 2002) ....................................................................................................................................... 10

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) .......................... 9

*Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) ............................................................ 6

*Moon v. SCP Pool Corporation,* 232 F.R.D. 633, 637 (C.D. Cal. 2005) ................................... 4, 5

*Night Hawk Ltd. v. Briarpatch Ltd.*, L.P., No. 03 Civ.1382, 2003 WL 23018833, *8 (S.D.N.Y. Dec. 23, 2003) ........................................................................................................................ 7

*Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, 2005 WL 2045818 (W.D. Mich. 2005) ................................................................................................................ 11

*Thompson v. Department of Housing & Urban Develop.*, 199 FRD 168, 171 (D. MD 2001) ....... 7

*Travelers Indem. Co. v. Metro Life Ins. Co.,* 228 F.R.D. 111, 113 (D. Conn. 2005) ............. 4, 6, 8

*Truswal Sys. Corp. v. Hydro Air Eng'g Inc.,* 813 F.2d 1207, 1210 (Fed. Cir. 1987) ..................... 5

*United States v. RW Profess.*, 228 F.R.D. 158 (E.D.N.Y. 2005) ................................................... 6

*United States v. Street* 531 F. 3d 703, 709 (8th Cir. 2008) .......................................................... 7

*Visto Corp. v. Smartner Info. Systems, Ltd.*, 2007 WL 218771, *4 (N.D.Cal. 2007) ............... 9, 11

*Wirtz v. Local Union 169, Int'l Hod Carriers', etc.*, 37 F.R.D. 349, 351 (D. Nev. 1965) .............. 6

**Statutes**

Fed. R. Civ. P. 45 .................................................................................................... 4, 5, 6, 10

Fed. R. Civ. P. 26 ................................................................................................................ 5, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is a dispute between competitors concerning defendant Creative Compounds, Inc. ("Creative")'s statements about certain patents belonging to plaintiff Natural Alternatives International, Inc. ("NAI")'s patents. The nonparties Saminchem Inc. ("Saminchem"), Sunland Nutrition Inc. ("Sunland") and Vitajoy USA, Inc. ("Vitajoy") (collectively, the "Nonparties") have no stake in the outcome of this fight and are merely competitors of NAI and Creative. Despite this, NAI seeks highly confidential trade secret information and documentation that is irrelevant to the causes of action.

## II. STATEMENT OF FACTS

### A. The Southern District Case

According to the complaint, plaintiff NAI sells, among other things, beta-alanine, an ammo acid, throughout the United States and in other countries. See Declaration of Joseph G. Chu ("Dec. Chu"), ¶ 2, Ex. 1, para. 1. NAI also owns multiple trademarks, including CARNOSYN, Serial No. 78372235 and Registration No. 3146289, and CARNOSYN BETA ALANINE, Serial No. 85606462 and Registration No. 4271217. Dec. Chu ¶ 2, Ex. 1, para. 8.

Defendant Creative is a global importer, supplier and distributor of raw ingredients to customers in the nutritional supplement, food, and beverage industries. Creative supplies beta alanine to nutritional supplement contract manufacturers, formulators and distributors in the United States. Dec. Chu ¶ 2, Ex. 1, paras. 14-15.

On or about September 5, 2015, Creative sent an email to customer and potential customers for the beta alanine compound discussing, among other things, the alleged invalidity of at least some of NAI's patents concerning beta alanine. Creative continues by offering to sell beta alanine at a significant reduction in cost as compared to its competitors. Dec. Chu ¶ 2, Ex. 1, para. 21.

As a result, NAI filed the instant case against Creative on September 18, 2015, in the U.S. District Court for the Southern District of California. NAI alleges five causes of action: 1) violation of the Lanham Act; 2) unfair competition; 3) false advertising 4) trade libel; and 5) tortious interference with prospective economic advantage. Dec. Chu ¶ 2, Ex. 1.

On or about February 11, 2016, the Honorable Magistrate Judge Ruben B. Brooks issued a Scheduling Order in the instant matter. Dec. Chu ¶ 3, Ex. 2. In his Schedule Order, Judge Brooks ordered that any motion to join another party, amend the pleadings or file additional pleadings shall be file by April 11, 2016. Dec. Chu ¶ 3, Ex. 2, para. 1. Further, Judge Brooks ordered that all discovery, including motions concerning discovery, shall be completed by October 17, 2016. Dec. Chu ¶ 3, Ex. 2, para. 2.

### B. The Subpoenas

On or about August 18, 2016, NAI served each of the Nonparties with a subpoena to produce documents, information or objects or to permit inspection of premises in a civil action. See Declaration of Scott Chou ¶ 5, Ex. 1; Declaration of Xuzhou Liu ¶ 5, Ex. 1; Declaration of Charles Kuo ¶ 5, Ex. 1. Save for the intended respondent, each of the Subpoenas served on the Nonparties ask for the identical information. Requests 1-4 seek documentation concerning the Nonparties' importation, warehousing, offer for sale and sale of beta alanine from January 2014 through the present. *Id*. Requests 5 and 7 seek documentation concerning communications and/or agreements between the Nonparties and Creative. *Id*. Request 6 seeks any documentation concerning NAI's patents that are in the Nonparties' possession.

On August 29, 2016, counsel for the Nonparties and NAI agreed to extend the deadline for the Nonparties to respond to the Subpoenas from September 1, 2016, to September 15, 2016. Dec. Chu ¶ 4, Ex. 3.

### C. Saminchem Inc.

Nonparty Saminchem is a California corporation with its principal place of business in Mira Loma, California. Saminchem distributes various food ingredients, nutraceuticals, cosmetics, chemical raw materials, animal feed, and herbals, as well as the ingredient products of other top name GMP approved – ISO 9001 qualified manufacturers. Dec. Chou ¶ 2. One of the products Saminchem distributes and/or sells is beta alanine under its own tradename SAMINCHEM. *Id*. However, Saminchem neither purchases beta alanine from NAI nor sells beta alanine to NAI. Similarly, Saminchem neither purchases beta alanine from nor sells beta alanine to Creative. Dec. Chou ¶ 4.

Saminchem has spent significant amount of time, money and resources independently developing strategies, programs and protocols specifically designed for its business structure, particularly its pricing structure and customer list. Its internal strategies are not disclosed to the public, and as a result, have allowed Saminchem to enjoy a significant market advantage. Dec. Chou ¶ 3.

### D. Sunland Nutrition, Inc.

Nonparty Sunland is a California corporation with its principal place of business in Anaheim, California. It is a premier distributor of full line L-Carnitine products, amino acids, nutrition supplements, vitamins, and ingredients. Sunland offers over 400 different types of essential food ingredients to its customers. Dec Liu ¶ 2. Just like nonparty Saminchem, Sunland expended a considerable amount of time, money and resources developing its business and marketing strategies, operating procedures, customer programs and strategic partnerships. Sunland's strategies, programs and protocols are independently developed and specifically designed to fit Sunland's business model. Dec Liu ¶ 3.

Moreover, Sunland neither purchases beta alanine from NAI nor sells beta alanine to NAI, and it neither purchases beta alanine from nor sells beta alanine to Creative. Dec Liu ¶ 4.

### E. Vitajoy USA Inc.

Nonparty Vitajoy is a California corporation with its principal place of business in Rowland Heights, California. Vitajoy is a distributor of vitamin raw materials, chemical preparations, herbal extracts, amino acids and nutritional supplements. One product Vitajoy has sold in the past is beta alanine under its own trademark AGMAMAX and/or COPMAX. Dec. Kuo ¶ 2. Just as with the other nonparties, Vitajoy neither purchases beta alanine from NAI nor sells beta alanine to NAI, and it neither purchases beta alanine from nor sells beta alanine to Creative. Dec. Kuo ¶ 4.

Since entering the domestic market in 2007, Vitajoy has expended considerable amount of time, money and resources developing its business and marketing strategies, operating procedures, customer programs and strategic partnerships. As a result, Vitajoy generates significant revenue as a result of its internal strategies, programs and protocols, including confidential price and customer lists. Dec. Kuo ¶ 3.

### III. ARGUMENT

#### A. Legal Standard

Federal Rules of Civil Procedure, Rule 45, governs the rights of nonparty witnesses in relation to discovery propounded by parties to an action. It provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that… requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The evaluation of "undue burden" requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. *Moon v. SCP Pool Corporation,* 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quotation and citations omitted); *Travelers Indem. Co. v. Metro Life Ins. Co.,* 228 F.R.D. 111, 113 (D. Conn. 2005). In making this assessment, the court considers "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it,

the particularity with which the documents are described and the burden imposed." *Moon,* 232 F.R.D. at 637; *see also Guy Chem. Co. v. Romaco AG,* 243 F.R.D. 310 (N.D. Ind. 2007) (other relevant factors include the narrowness of the request, the cost and availability of the information, the importance of the issues at stake, and the benefits to the parties).

Importantly, the fact of nonparty status is given special consideration by the court in weighing the burden imposed in the circumstances. *See Truswal Sys. Corp. v. Hydro Air Eng'g Inc.,* 813 F.2d 1207, 1210 (Fed. Cir. 1987). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 R3d 708, 717 (1st Cir. 1998); see also *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery."); *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.")

Further, while a court "must" quash a subpoena that subjects a party to an "undue burden," Rule 45(d)(3)(B)(i) authorizes courts to quash or modify a subpoena to prevent the unnecessary or unduly harmful disclosures of a trade secret or other confidential research, development, and commercial information. Courts have traditionally recognized that "disclosure to a competitor is more harmful than disclosure to a noncompetitor." *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 741 (Fed. Cir. 1987).

Finally, pursuant to Rule 26(b)(2)(C)(i), a court may limit discovery if "the discovery sought ... can be obtained from some other source that is more convenient, less burdensome or less expensive."

## B. This Motion should be transferred to the U.S. District Court for the Southern District of California

As an initial matter, pursuant to Rule 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents." Here, each of the Nonparties consents to the transfer of the instant Motion to Quash from the U.S. District Court for the Central District of California (compliance Court) to the U.S. District Court for the Southern District of California (issuing Court).

## C. The Nonparties' market share information is irrelevant

NAI's subpoenas should be quashed for requests 1-4 seeking documentation concerning the Nonparties' importation, warehousing, offer for sale and sale of beta alanine is unequivocally irrelevant to any of NAI's causes of action. A subpoena should be quashed if it "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv); see also *Traveler's Indem. v. Metropolitan Life*, 228 F.R.D. 111, 113 (D.Conn. 2005) ("whether a subpoena imposes undue burden depends on relevance, need of party for documents, breadth of document request, [etc.]."); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) ("Discovery of information that has no conceivable bearing on the case should not … be allowed [citation]."). In *United States v. RW Profess.*, 228 F.R.D. 158 (E.D.N.Y. 2005), the court held that "a proponent must show that the subpoena is used to obtain relevant evidence and not merely as a 'fishing expedition' to expand discovery." *Id*. at 162. The relevance of information sought via a subpoena must be readily ascertainable. See *Wirtz v. Local Union 169, Int'l Hod Carriers', etc.*, 37 F.R.D. 349, 351 (D. Nev. 1965) (quashing a subpoena to government party which by its terms, sought disclosure of a variety of statements, reports and memoranda whose relevance to any proper issue in the case was not readily apparent). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v.*

*Briarpatch Ltd.*, L.P., No. 03 Civ.1382, 2003 WL 23018833, *8 (S.D.N.Y. Dec. 23, 2003). Although irrelevance is not among the enumerated reasons for quashing a subpoena under Rule 45, Federal Courts have incorporated relevance as a factor to be considered when ruling on motions to quash. See *Anderson v. Abercrombie & Fitch Stores, Inc.*, No. 06cv991-WQH (BLM), 2007 U.S. Dist. LEXIS 47795, at *6 (S.D. Cal. July 2, 2007).

In its complaint, NAI alleges five causes of action: 1) violation of the Lanham Act; 2) unfair competition; 3) false advertising 4) trade libel; and 5) tortious interference with prospective economic advantage. While NAI vaguely mentions a portfolio of patents, NAI specifically does not allege or assert patent infringement against Creative. In fact, the entire case centers around Creative's statements that several of NAI's patents were deemed invalid.

Thus, documentation concerning the Nonparties' importation, warehousing and sale of beta alanine in no foreseeable way could prove and/or negate NAI's allegations that Creative made false and/or misleading statements which violated the Lanham Act or that said statements rise to the level of false advertising or trade libel. Further, the quantity of beta alanine the Nonparties imported and sold in the U.S. has absolutely no bearing on whether Creative engaged in tortious interference with a prospective economic advantage.

Further, issues not raised by the pleadings are not relevant. *United States v. Street* 531 F. 3d 703, 709 (8th Cir. 2008). Matters that are merely "relevant" to the "subject matter" are discoverable only with leave of court for "good cause" shown. FRCP 26(b)(1). Even the discovery of inadmissible evidence must be relevant to a party's claim or defense. *Thompson v. Department of Housing & Urban Develop.*, 199 FRD 168, 171 (D. MD 2001). If broader discovery is needed beyond the claim of plaintiff, then leave of court must be obtained. This Rule is designed "to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Advisory Committee Notes to 2000 Amendment to FRCP

NOTICE OF MOTION AND MOTION TO QUASH

Case 2:16-mc-00118-RGK-KS   Document 1   Filed 09/15/16   Page 14 of 19   Page ID #:14

26(b)(1). Where the information sought is simply too remote to any matter involved in the case, discovery may be denied. *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F. 3d 1007, 1012-1013 (DC Cir. 1997).

NAI does not allege it has a patent as to all formulations of beta alanine, nor does NAI suggest that Creative somehow infringes any of NAI's "34 patents in the United States and foreign countries related to beta-alanine." As a result, the mere importation, warehousing and sale of beta alanine, by itself, is irrelevant to any conceivable cause of action NAI could attempt to articulate.

The standard of relevancy is not so liberal as to allow NAI to explore the Nonparties' business records which do not presently appear germane on the threadbare theory that it might conceivably become so.

### D. NAI has no need to acquire correspondence between the Nonparties and Creative because it is available from Creative

NAI's subpoenas should be quashed for requests 5-and 7 seeking correspondence between Creative and each of the Nonparties is unduly burdensome to Nonparties given the information is more easily obtainable from Creative. It is well established that where materials are readily available from a party in the action, such information must be sought from the party before a nonparty can be burdened. *Bader Co. v. Montgomery Ward*, 32 F.R.D. 208, 209-210 (S.D. Cal. 1963). Thus, requests 5 and 7 should be quashed because the information is available from other sources, particularly defendant Creative. See *Travelers Indemnity Co.*, 228 F.R.D. at 114 (quashing subpoena on nonparty where information available publicly: "the information in question appears to be publicly available from a source that is more convenient, less burdensome, or less expensive, without subjecting Travelers to undue burden"); see also *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 328 (D.D.C. 1966) ("Necessity for production [from nonparty] is sharply reduced where an available alternative for obtaining the desired evidence has not been explored."); *Visto Corp. v.*

8
NOTICE OF MOTION AND MOTION TO QUASH

*Smartner Info. Systems, Ltd.*, 2007 WL 218771, *4 (N.D.Cal. 2007) (quashing nonparty subpoena where "there is no reason to believe that [subpoenaed party] possesses any information not publicly available or available in the documents produced by [party to the action]," or that is independently relevant).

### E. NAI's requests are overbroad and burdensome

Courts have broad discretion to determine whether a subpoena is unduly burdensome. See *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); see also *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (holding subpoenas properly quashed where their overbreadth led the court to conclude that subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information").

Each of NAI's requests seek "[a]ll documents concerning, referring to and/or relating to…" This is textbook overbreadth. For example, requests 1-4 seek all documents merely relating to the purchase, importation, warehousing, advertisement and sale of beta alanine. Compliance with these requests involves the gathering and review of thousands of documents given the threshold is that a document must merely be "related to" the Nonparties' beta alanine business.

Request 6 seeks all documents, no matter how tangential, that could in some remote miniscule way, have a relation to NAI's patents. "NAI's patents" is undefined and incredibly vague, given that in the complaint NAI asserts it has "34 patents in the United States and foreign countries related to beta-alanine" alone. This request is unbounded as to time or from which country the "NAI patents" originate. It seems overly broad and therefore burdensome for the Nonparties to search for and produce documents relating to any of NAI's patents, even patents that have no force or effect on U.S. commerce. This request is also suspect given patent infringement is not alleged in the instant case.

These requests also appear to seek the production of attorney-client privileged documents as well as attorney work product, given these privileged

documents would be "related to" the requests. Provided the overly broad nature of these requests, and the burden to the Nonparties in complying thereto, the Court should quash the requests as being nothing more than annoying harassment.

### F. NAI's requests seek highly confidential, competitive information

The Nonparties' agreements, purchasing details and sales information is highly confidential and protectable trade secret interests. Rule 45(d)(3)(B)(i) authorizes this Court to quash or modify NAI's subpoenas to prevent the unnecessary or unduly harmful disclosures of the Nonparties' trade secrets or other confidential research, development, and commercial information.

Once a nonparty moving to quash a subpoena has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets and confidential information is relevant and necessary to its case. *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 528-529 (D. Del. 2002); see also *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006). The burden is on the requesting party to prove that it has "substantial need" for the discovery which "cannot be otherwise met without undue hardship..." Fed. R. Civ. P. 45(d)(3)(C)(i). Nonparties point out that Courts have traditionally recognized that "disclosure to a competitor is more harmful than disclosure to a noncompetitor." *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 741 (Fed. Cir. 1987).

First, there is no question that each of the Nonparties and NAI and Creative are competitors. Each imports and distributes a host of vitamin raw materials, ingredients, chemical preparations, herbal extracts, amino acids and nutritional supplements. Thus, disclosure of the Nonparties' confidential information to NAI and Creative will be more harmful than disclosure of the same information to a noncompetitor.

NAI's subpoena requests are similar to the requests in *Spartanburg Regional*

*Healthcare System v. Hillenbrand Industries, Inc.*, 2005 WL 2045818 (W.D. Mich. 2005). There, nonparty Steelcase challenged a subpoena served on it by the defendant which sought an enormously broad range of competitive information, including sales, market share, pricing, business planning and strategic analysis, and documents related to competition. *Id*. at * 1-2. The Court had no trouble concluding the information sought was both confidential and proprietary and that its disclosure, particularly to a competitor such as the requesting party, would harm Steelcase. *Id*. at *3 ("that Hillenbrand seeks the product of sensitive and confidential business information is apparent from the very nature of the requests at issue ... The Court further finds that production of the requested information would subject Steelcase to significant harm."). The Court quashed the subpoena, finding Steelcase's confidentiality concerns outweighed any tangential relevance or need for the requested information.

Similarly, the Court here should quash NAI's subpoena requests 1-4 and 7 given each of the Nonparties' legitimate confidentiality concerns far outweighs any of NAI's tangential relevance or need for such highly confidential information.

### G. A Protective Order will not overcome the Nonparties' legitimate objections to producing valuable and confidential information

Finally, any argument that a protective order will adequately address the Nonparties' concerns is without merit. Generally, while the availability of a protective order may preclude a party from relying on legitimate privacy and competitive business interests to avoid production of relevant information, it is less reasonable to require a nonparty to disclose its confidential information even under such protections. *Visto Corp. v. Smartner Info. Systems, Ltd.*, 2007 WL 218771 (N.D.Cal. 2007). Furthermore, a protective order which limits to whom information may be disclosed does not eliminate the requirement of relevance and need. *American Standard Inc.*, 828 F.2d at 531 (Fed. Cir. 1987). Here, for reasons

discussed above, NAI cannot demonstrate the relevance or need for the information sought by requests 1-4 and 7.

As referenced supra, the court in *Spartanburg*, in a factually similar matter where a defendant sought broad discovery of "competitive information" related to a competitor, held a protective order would not be adequate to protect the nonparty's legitimate confidentiality interests. The Court held: "As has been recognized, in circumstances such as this a protective order is of little or no benefit to the non-party being asked to produce confidential business records." *Spartanburg*, 2005 WL 2045818, *5.

Similarly, in *Echostar Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391 (D. Colo. 1998), the court quashed subpoenas issued against nonparty competitors for highly confidential business information and rejected the argument that a protective order would suffice to protect their confidentiality interest. *Echostar* is also factually similar to this matter. There, *Echostar* requested highly confidential and proprietary information such as "revenue projections, price forecasts, pricing options, evaluations of proposed capital structures and analyses." *Id*. at 395. Nonparties argued that because of the competitive nature of the information sought, disclosure or misuse of the information could substantially impair the nonparty competitors' businesses and give Echostar an "enormous competitive advantage." *Id*. The nonparties refused to provide the documents and Echostar filed motions to compel. The *Echostar* Court raised the following factors, among others, as its basis for denying Echostar's motion: (1) Echostar had not exhausted its efforts to obtain the subject materials first from defendant News Corp.; (2) Echostar was seemingly seeking to obtain the discovery for purposes unrelated to the litigation; (3) the documents sought trade secret or commercial information of a highly sensitive and confidential nature; (4) the materials sought were irrelevant to the lawsuit; and (5) production of the materials would be overly burdensome for the nonparties. *Echostar*, 180 F.R.D. at 393. Further, the Court

reasoned that Echostar failed to meet the heavier burden of proof required when seeking discovery from nonparties. *Id*. at 394.

Here, NAI has failed to exhaust all efforts to obtain documentation concerning correspondence between the Nonparties and Creative in requests 5 and 7. NAI seems determined to obtain the Nonparties' confidential sales information which is wholly irrelevant to any of its causes of action. Requests 1-4 seek unequivocally sensitive information of high value to the Nonparties and the documentation, as a whole, is irrelevant to whether Creative made false and/or misleading statements. Further, production of the overly broad requested documentation would unduly burden the Nonparties. Similar to the outcome in *Echostar*, NAI's subpoenas should be quashed in their entirety.

## IV. CONCLUSION

For the foregoing reasons, Nonparties Saminchem Inc., Sunland Nutrition Inc. and Vitajoy USA, Inc. request the Court quash plaintiff National Alternatives International, Inc.'s subpoenas in their entirety.

Dated: September 15, 2016         JCIP

By: /s/ Joseph G. Chu
    Joseph G. Chu

    Attorneys for Nonparties
    SAMINCHEM INC.
    SUNLAND NUTRITION, INC.
    VITAJOY USA INC.